IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ALVIN CHAMBERS,

Petitioner,

v. Civil Action No. 1:12-cv-82
(Judge Keeley)

DAVID BALLARD, Warden,

Respondent.

**REPORT & RECOMMENDATION**

## *I. INTRODUCTION*

On May 10, 2012, Alvin Chambers (Petitioner) filed a petition under 28 U.S.C. § 2254 challenging his state court conviction in Webster County, West Virginia. The petition was originally filed in the United States District Court for the Southern District of West Virginia, but on May 14, 2012, the case was transferred to this Court. On June 4, 2012, this Court granted Petitioner's motion for leave to proceed as a pauper and ordered Respondent to show cause why the petition should not be granted. On August 2, 2012, Respondent filed a Motion for Summary Judgment (Doc. 26) and the Court issued a *Roseboro* Notice[1] to inform Petitioner of his right to file responsive material. The same day that the Court issued the *Roseboro* Notice, Petitioner filed, and the Court granted, a motion to amend the 2254, wherein Petitioner added a single count of error to the Petition. He then filed his response to the motion for summary judgment, which is now ripe for this Court's review.

## *II. THE STATE CONVICTION & REVIEW*

On September 3, 2003, a West Virginia grand jury returned a four count indictment against

[1] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

Petitioner charging him with four counts of sexual abuse on a minor, stemming from two separate occurrences with the victim. That indictment was dropped, however, in January 2005 after counsel for Petitioner raised some issues about testimony provided to the grand jury that was inconsistent with the allegations. On February 28, 2005, the grand jury returned another indictment against Petitioner charging the same offenses. Trial began on July 26, 2005, lasted two days, and resulted in Petitioner's conviction and sentence to a range of twenty to forty years in prison.[2]

As evidence of the crimes charged, the State presented the testimony of the still minor victim in the case, the arresting police officer and case worker assigned to the victim, and the mother of the victim. Moreover, the state introduced a taped telephone conversation set up by the police between the victim and Petitioner, and some items the victim purchased with money given to him in exchange for the sexual acts. The defense presented several witnesses, trying to cast doubt into the jurors minds about whether these acts took place. Petitioner decided at the last minute not to testify.

At the close of the evidence, Petitioner moved the Court to dismiss the indictment, because it charged that the crimes were committed in April 2003 and testimony elicited during the trial suggested that the incidents could have occurred a month or two earlier. The trial court denied the motion, as well as a motion for judgment of acquittal. On April 18, 2006, Petitioner appealed his conviction to the West Virginia Supreme Court of Appeals. The state's highest court denied the petition, without a written opinion. No direct appeal was filed with the United States Supreme Court.

Petitioner then moved to collaterally attack his conviction and sentence in state court, filing a habeas petition on August 18, 2006 in the Circuit Court of Webster County. The state court

[2] Petitioner was sentenced to two terms of not less than ten years nor more than twenty years, and two terms of not less one nor more than five years, but the way the judge made certain counts concurrent with others, and groups of sentences consecutive to others, it worked out to an effective sentence of twenty to forty years.

appointed an attorney to represent Petitioner in the state habeas proceeding and held an omnibus hearing on May 29, 2007. The following December, the state habeas court denied the petition in its entirety. Petitioner appealed that decision to the West Virginia Supreme Court of Appeals, which again denied review.

Eventually, it came to the state habeas judge's attention that in his final order denying relief he inserted language that all sentences were to run concurrently, rather than the consecutive sentences contained in the original sentencing order, which effectively cut Petitioner's sentence in half.[3] By order dated April 28, 2009, the judge proclaimed that the language was solely a clerical error and entered a *nunc pro tunc* order correcting that language. On September 29, 2010, Petitioner filed another state habeas petition raising the correction in the order as his sole ground. The state habeas court appointed counsel, allowed the parties to brief the issue, held another omnibus hearing, and denied the petition. That decision was appealed to, and denied by, the West Virginia Supreme Court. The instant petition followed. It is both timely, and most issues raised in the instant petition have been exhausted in the state courts.

In his petition, Mr. Chambers raises the following grounds for why the writ should be granted: (1) Petitioner was not read his *Miranda* warnings prior to giving a statement; (2) an oral statement used at trial was obtained by police force; (3) police violated the prompt presentment rule in order to obtain incriminating statements; (4) an arresting officer gave conflicting testimony during questioning about the *Miranda* warnings, and that the state knowingly used this perjured testimony; (5) he was not convicted by an impartial jury, and that a new trial should have been granted; (6) the prosecutor made prejudicial statements during his closing argument; (7) the trial court erred by

[3] It came to the judge's attention when Petitioner sent him a letter thanking him for the reduction in time, and asking the judge to cut more time from the sentence.

allowing a taped telephone conversation to be published to the jury; (8) the trial court erred by failing to dismiss the indictment; (9) the jury instructions were prejudicial; (10) that the judge violated judicial conduct cutting his time in half and then reinstating it, and that his due process rights were violated based on this action; and (11) counsel was ineffective for failing to object to the alleged perjured testimony, failing to properly impeach and cross-examine witnesses, and failing to procure a witness.

## *III. STANDARD OF REVIEW*

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In viewing the motion for summary judgment, the Court must do so under the constraints imposed by the habeas statue. Under § 2254, this Court may not grant federal habeas relief unless it concludes that West Virginia's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has

on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 405. A state court decision "involves an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), if the state court decision "identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id.* Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" for habeas relief to be granted. *Id.* at 411.

As these principles make clear, § 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts:

> [Section 2254(d) ] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011). A habeas petitioner proceeding under § 2254 bears the burden of showing that he is entitled to habeas relief under this highly deferential standard.

Finally, determination of factual issues by the state court are presumed to be correct, and the

petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir.2010). This standard "reflects Congress's view that there is no reason for a do-over in federal court when it comes to facts already resolved by state tribunals." *Id.* Accordingly, courts should not "casually cast aside a state court's factual findings. *Id.*

### *IV. DISCUSSION*

Petitioner raises a number of allegations charging that he was not informed of his right to remain silent prior to giving incriminating statements, that his Due Process rights have been violated, and that he was deprived of effective assistance of counsel during the trial. Moreover, he contends that the trial court erred in several of its evidentiary rulings. Some of the grounds overlap in both factual and legal grounds, so the Court will address them it what it sees as an efficient fashion, noting the grounds as labeled in the petition for reference.

#### *A. Non-cognizable Claims (Grounds 3, 10, 12, 14, & Amended Petition Ground)*

The Court can first dispose of several of Petitioner's claims as they are not cognizable under § 2254. Section 2254 unambiguously provides that "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2010) (emphasis in original). As such, the United States Supreme Court has "repeatedly held that federal habeas corpus relief does not lie for errors of state law." *Id.* (internal quotations and citation omitted). *See also Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011).

First, Petitioner claims that he was not promptly presented before a magistrate after arrest in violation of W. VA. CODE § 62-1-5 and W. VA. R. CRIM. P. 5(a). The state court's determination that

this "Prompt Presentment" rule was not violated clearly revolves around an interpretation of state law. Similarly, Petitioner's claim that the trial court erred in its evidentiary ruling allowing a taped telephone conversation to be played for the jury is not within the purview of this Court's review. Petitioner also claims that the trial court erred by submitting instruction number two to the jury. That instruction was a recitation of West Virginia law that a conviction for a sexual offense may be obtained solely from the uncorroborated testimony of the victim, unless the jury found the victim inherently incredible. This is a West Virginia's court interpretation of West Virginia law, which, again, is not cognizable under 2254 review.

Finally, Petitioner claims that the state habeas judge, who also presided over his trial, violated judicial conduct by correcting what the judge termed a "clerical mistake" in the habeas order. In that order, the judge effectively cut the sentence in half by replacing the word consecutively, as contained in the original sentencing order, with concurrent. The judge later entered an order fixing the mistake and reinstating the original sentence. Simply put, Petitioner has not advanced any federal law, as determined by the Supreme Court, that advances this claim of a violation of judicial conduct. Therefore, no relief can be granted.

Further, Petitioner argues that he was denied the right to notice, an opportunity to be heard, and assistance of counsel when the judge entered the *nunc pro tunc* order correcting the mistake. The state habeas court, as well as the West Virginia Supreme Court of Appeals, held that it had the power to correct the error under West Virginia Rule of Criminal Procedure 36, and that it did not change Petitioner's sentence in any way; it only reinstated the proper sentence. Again, Petitioner has not advanced any proposition that this is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. In fact, the United States Supreme Court has never examined the contours of Federal Rule 36, which the state rule mimics. Thus, no

relief can be granted on this claim.[4]

***B. The Statement (Grounds 1 & 2)***

Petitioner raises several claims arising from a statement he made to officers after being arrested. That statement, made to Deputy Knight after Petitioner was arrested at his home and taken to the state police barracks, is "[i]t took you three f*cking years to get me again. No one will believe you again. I'll say it's all lies." Petitioner contends that he was not informed of his right to remain silent, as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), prior to his uttering those words. Petitioner goes on to allege in the supporting facts for this ground of relief that he did not freely and voluntarily waive his *Miranda* right; rather a waiver was obtained by police force. The Court first notes the inconsistency between these two claims, because there cannot be both an absence of *Miranda* warnings and a forced waiver of the rights once a defendant is made aware of them. However, Petitioner is not entitled to relief under either scenario.

*1. Miranda (Ground 2)*

It is clearly established federal law that a suspect must be informed of certain constitutional rights before being subjected to custodial interrogation. *See Miranda*, 384 U.S. at 479. Simply put, "[t]he *Miranda* rule and its requirements are met if a suspect receives adequate *Miranda* warnings, understands them, and has an opportunity to invoke the rights before giving any answers or admissions." *Berghuis v. Thompkins*, 130 S. Ct. at 2263. Moreover, police are not required to obtain a waiver before beginning interrogation. *Id.* at 2264.

The state court believed the testimony of two police officers that Petitioner was advised of

[4] Several Courts of Appeals have addressed Rule 36, as have the Advisory Committee's Notes to the Rule. However, those are not within the scope of review under 2254; only clearly established federal law as determined by the Supreme Court is used in determining whether a state's decision is contrary or unreasonable.

his rights under *Miranda* before he made the statement, and that the statement was not the result of interrogation; rather, it was an unsolicited utterance by Petitioner. These factual determinations are entitled to a presumption of correctness, and Petitioner has not satisfied his part of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Accordingly, applying these facts to the rule set forth in *Miranda* and its progeny, this Court finds that the state's determination that the statement was not the result of interrogation is not contrary to, or an unreasonable application of, that clearly established federal law.

The officers testified that Petitioner was read his *Miranda* rights twice: first, upon initial arrest at his residence; and second, after he was taken to the state police barracks. Further, Deputy Knight testified as trial that Petitioner acknowledged that he understood these rights. Finally, the record is not clear as to whether Petitioner unambiguously invoked his right to remain silent, which he must do. *See e.g. Davis v. United States,* 512 U.S. 452, 459 (1994). Under this scenario Petitioner was advised of his rights and had twenty five minutes to mull them over before making the statement. "In sum, a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Berghuis*, 130 S. Ct. at 2264. Thus, *Miranda* would not be implicated.

If Petitioner did unambiguously invoke his rights, then the prophylactic rule of *Miranda* and its progeny kicks in. However, the *Miranda* safeguards only apply in the context of custodial interrogations. Thus, the suspect has to first be in custody, and there has to be an interrogation. *See Yarborough v. Alvarado*, 541 U.S. 652 (2004). There is no doubt Petitioner was in custody at the time of the statement, because he was formally arrested half an hour prior. The question then turns on whether there was an interrogation.

The Supreme Court has clearly defined interrogation as either (1) express questioning, or (2)

its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1979). Further, the functional equivalent of interrogation is any statement "the police should know [is] likely to elicit an incriminating response from the suspect." *Id.* Here, the presumed correct factual determination by the state court that the police did not make any statements or take any actions against the defendant that would have the functional equivalent of interrogation lead to the necessary conclusion that police actions did not run afoul of *Miranda*. This determination is not contrary to *Miranda*; rather, it is directly in line with it.

*2. Voluntariness (Ground 1)*

Petitioner also alleges that, prior to him giving the statement, a state police officer grabbed him by the face, slammed him into a wall, and asked, "do you swaller or do you let it run out of your mouth." Moreover, Petitioner alleges that the state trooper stated that "if you keep rolling your eyes at me like my mother does, I am going to smack you." Whereas the Fifth Amendment protects a suspect or defendant against being compelled to be a witness against himself, the due process protection stems from the principle that "tactics for eliciting inculpatory statements must fall within the broad constitutional boundaries imposed by the Fourteenth Amendment's guarantee of fundamental fairness." *Miller v. Fenton*, 474 U.S. 104 (1985). Certainly, allegations of this sort are not taken lightly and an incriminating statement obtained through force or intimidation can infect the fairness of the entire judicial proceeding. *See Brown v. Mississippi*, 297 U.S. 461 (1936).

In determining the voluntariness of the statement, the Court must look to the "totality of the surrounding circumstances." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). Among the factors the Court should look to in assessing the totality of the circumstances are the length and location of the interrogation; an evaluation of the maturity, education, physical and mental condition of the defendant; and

determination whether the defendant was properly advised of his *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). Thus, the determination must me made on a case by case basis. *See Schneckloth*, 412 U.S. at 224. Moreover, when police misconduct is involved, the alleged misconduct does not rise to the level of a due process violation unless it "so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States." *Moran v. Burbine*, 475 U.S. 412, 433-34 (1986).

The state court found, in dismissing Petitioner's claims, that there was no evidence that any of the complained of incidents took place. The Court finds that this is not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, which are entitled to a presumption of correctness, and Petitioner has not rebutted that presumption by clear and convincing evidence. 28 U.S.C. 2254(d), (e)(1). In fact, the only evidence that incidents took place is Petitioner's word, which avers that a Trooper Short committed these acts when no such trooper was at the police barracks that night. The state trooper that was there testified that the incidents never took place. Also, in evaluating the enumerated factors above, there was no interrogation–Petitioner was in police custody less than a half an hour before making the statement–and Petitioner appears to have an adequate level of maturity, and physical and mental condition. Petitioner was properly advised of his *Miranda* rights. Finally, nothing in the allegation, even if accepted as true, shocks the sensibilities of a civilized society in such a manner to warrant granting the writ. Thus, the state court's determination that the statement was voluntary is not contrary to, or an unreasonable application of, clearly established federal law.

***B. Due Process (Grounds 4, 5, 7, 8, 11, & 13)***

Petitioner makes several claims, some which overlap the facts of others, that would fall under the confines of his due process rights: (1) that the state used perjured testimony against him; (2) the

prosecutor made improper comments to the jury during closing arguments; (3) there was improper conduct of the jury; and (4) there was a variance in the indictment and the proof at trial. For the foregoing reasons, the Court finds that habeas relief cannot be granted on any of these claims and will discuss the reasoning of each in turn.

*1. Perjured Testimony (Grounds 4 and 5)*

Petitioner argues that the arresting officer, Deputy Knight, testified inconsistently about how she issued the *Miranda* warnings and that the state knowingly used this false testimony. It is clearly established federal law that a defendant's right to due process is violated when the state's case included perjured testimony and the "prosecution knew, or should have known, of the perjury." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also Napue v. Illinois*, 360 U.S. 264 (1959). This standard also applies even if the prosecution does not know at the time of the presentation of the evidence, but "allows it to go uncorrected when it appears." *Napue*, 360 U.S. at 269. A conviction must be set aside if there is a "reasonable likelihood" that the perjured testimony could "have affected the judgment of the jury." *Id.* at 271; *see also Giglio v. United States*, 405 U.S. 150, 153-54 (1971).

The state court found that, "taking the officer's testimony as a whole," that the complained of inconsistency "is far from any definition of 'perjury' which requires a showing of 'willfulness.'" Further, the state court found that any inconsistencies that came out at trial went to the credibility of the witness–a determination to be made by the jury. This finding is not contrary to, or an unreasonable application of the standard announced in *Agurs* and *Napue*. Not only has there been no showing that the prosecution knew, or should have known, that the officer was giving perjured testimony, there is no reasonable likelihood that whether or not the officer read the *Miranda* warnings from a card could have any effect on the jury's decision to give the officer's testimony

credible weight and find Petitioner guilty.

*2. The Prosecutor's Statements (Ground 8)*

During closing arguments, the prosecutor likened Petitioner to a predator preying on a weakened animal, and suggested to the jurors that their children would not be safe if left with Petitioner. Moreover, the prosecutor made comments regarding the truth and the standard of proof.[5] It is clearly established federal law that the relevant inquiry into this claim is "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Further, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Id.*[6] The state court applied state law in finding that the prosecutor's statements were not improper, and this Court finds that this decision is not contrary to clearly established due process standard enunciated above. In fact, the prosecutor's remarks do not even come close to those that did not violate due process in *Darden*.

*3. The Jury (Grounds 7 and 13)*

---

[5] The prosecutor's statement was:

> "[The victim] came in here and did his best, did his level best, and to the best of his ability to tell you the truth and you folks are the judges of that. You get to decide if he told the truth and the Court just told you, the judge just told you, his testimony alone, if you believe it, is enough to convict the defendant of each and every count of this indictment. His testimony alone is enough.

[6] As a point of comparison, the *Darden* Court found that it was not a violation of due process when the prosecutor, among others, compared the defendant to an animal and tendered the following to the jury:

> "He shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash." "I wish [Mr. Turman] had had a shotgun in his hand when he walked in the back door and blown his [Darden's] face off. I wish that I could see him sitting here with no face, blown away by a shotgun." "I wish someone had walked in the back door and blown his head off at that point." "He fired in the boy's back, number five, saving one. Didn't get a chance to use it. I wish he had used it on himself." "I wish he had been killed in the accident, but he wasn't. Again, we are unlucky that time." "[D]on't forget what he has done according to those witnesses, to make every attempt to change his appearance from September the 8th, 1973. The hair, the goatee, even the moustache and the weight. The only thing he hasn't done that I know of is cut his throat."

*Darden*, 477 U.S. at 180, n.12.

Petitioner raises, in several grounds, that he was denied a fair trial because of improper conduct of the jury.[7] On the morning that the jury returned its guilty verdict against Petitioner, the bailiff handed the judge a note that was given to him by a member of the jury. That note said: "Explanation for Judge Facemire.[8] Blood in, blood out. God put your blood in. If you say anything, I'll take your blood out." During the trial there were several references to the "blood in, blood out" language as it was contained in letters sent by Petitioner to the victim while the victim was housed at a shelter. Those letters prompted the investigation into Petitioner's relationship with the victim. Counsel for defendant insinuated through cross examination of witnesses that this was a line from a movie, and Deputy Knight testified that the victim said it "just meant good friends and kind of like blood brothers."

Well over a century ago the United States Supreme Court declared that "private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Mattox v. United States*, 146 U.S. 140, 150 (1892). However, over the years the Supreme Court has demonstrated "that due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable." *Smith v. Phillips*, 455 U.S. 209, 217 (1982) Moreover, "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Id.* Thus, the Court held, "[d]ue process means a jury capable and willing to decide the case solely

---

[7] Petitioner also claims that two members of the jurors were biased against him and should have been struck, violating his right to an impartial jury. However, one of the jurors, Juror Brown, was struck peremptorily. Thus, no relief can be granted. *See Ross v. Oklahoma*, 487 U.S. 81 (1988). Moreover, Petitioner cannot identify the other juror, only that she was the blond-headed one in the back, and that he "cussed her out at Walmart" one time.

[8] Judge Jack Alsop was the circuit court judge presiding over Petitioner's case, so the juror got the judge's name wrong. Judge Facemire is, however, the other judge sitting in the Webster County Circuit Court.

on the evidence before it." *Id.*

The state court found that the note which Petitioner is complaining of "occurred intrinsic to the deliberative process . . . [and] is merely one juror's interpretation of, or comment on, evidence properly admitted at the trial of this matter." Further, the state court noted that the comment did not indicate any bias or improper conduct by the juror. This decision is not contrary to the clearly established federal law set forth. First, the note was passed from a juror to the bailiff during deliberations, and then passed along to the judge. Thus, there was no private communication between the juror and judicial officer. Moreover, there is no evidence that the juror used anything extrinsic in his decision making process. The phrase "blood in, blood out" was peppered throughout the trial transcript and the juror's note could have simply been his interpretation of that comment. Whether it was wise to send the comment to the judge does not implicate the safeguards afforded by due process.

Moreover, even if the juror's explanation did draw from some common experience extrinsic to the proceeding, Petitioner has not identified, nor is the Court aware of, any clearly established federal law to which this would run contrary. For example, in *Billings v. Polk*, 441 F.3d 238 (4th Cir. 2006), a 2254 Petitioner raised the ground that one of the jurors consulted the bible the night before sentencing to aid in his deliberations. The Fourth Circuit found no clearly established federal law that prohibited consulting a bible and denied the petition. Thus, no relief can be granted on Petitioner's claim of improper communications and bias from the jury.

*4. Variance in the Indictment (Ground 11)*

Petitioner next argues that there was a fatal error in his indictment because the indictment alleges that the sexual abuse happened in the month of April 2003, and the evidence at trial showed that the abuse occurred "a couple of months before" the victim was placed at the shelter, which

occurred in May 2003. Thus, the incidents could have occurred before the indictment alleges. The state court, in citing West Virginia law, found that the time of the crime was not of the essence and that there were no statute of limitations issues. Thus, the failure to state the correct date was not fatal to the indictment.

As the Supreme Court has explained, a variance warrants the reversal of a conviction only if it "affect[s] the substantial rights of the accused." *Berger v. United States*, 295 U.S. 78, 82 (1935). Moreover, substantial rights are affected only where a defendant is "prejudicially surprised" by the variance, or where it has otherwise "prejudice[d] the fairness of [the defendant's] trial. *United States v. Miller*, 471 U.S. 130, 134-35 (1985). This Court finds that the state courts determination is not contrary to this clearly established federal law. The indictment in Petitioner's case clearly set forth the charges against him, to wit that he placed his mouth on the penis of B.C., the victim, on two separate occasions. This clearly placed him on notice of the charges he was to defend himself against. Moreover, a one, two, or even three month variance in the ages of Petitioner and the victim would not take him out of the reach of prosecution under the statutes with which he was charged. In short, Petitioner cannot show prejudice in the trial based on this variance.

***C. Ineffective Assistance of Counsel (Ground Six)***

Petitioner contends that his counsel was ineffective for several reasons, including: (1) failure to object to the admission of perjured testimony; (2) failure to impeach the officer for giving inconsistent statements; (3) failure to procure a witness; and (4) failure to properly cross examine witnesses. When a petitioner brings an ineffective assistance of counsel claim, counsel's conduct is measured under the two part analysis in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant

by the Sixth Amendment." *Id.* at 687. "'Deficient performance' is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance." *Griffin v. Warden, Maryland Corr. Adj. Ctr.*, 970 F.2d 1355, 1357 (4th Cir. 1992).

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. In order to demonstrate prejudice, the defendant must show that but for his attorney's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687. Error by counsel which falls short of the constitutional ineffectiveness standard does not constitute cause, notwithstanding that the error may arise from inadvertence, ignorance or strategic choice. *Murray v. Carrier*, 477 U.S. 478 (1986); *Griffin v. Aiken*, 775 F.2d 1226 (4th Cir. 1985) *cert. denied*, 478 U.S. 1007 (1986).

When reviewing claims of ineffective assistance under § 2254(d), as modified by the Anti-Terrorism and Effective Death Penalty Act (AEDPA),

> [t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

*Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (internal citation omitted). Section 2254, as amended by the AEDPA, is meant to be a high bar because it deals with claims that have already

been litigated in state court. *Id.* at 786. Accordingly, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). With this standard in hand, the Court will now look to Petitioner's allegations.

The state court summarily dismissed all of the ineffective assistance claims as not supported by the evidence. This Court finds that the state court's decision to deny the claims was not contrary to, or an unreasonable application of *Strickland*. First, with regard to Petitioner's claim that counsel should have objected to the admission of perjured testimony, the Court has already found that there was no reasonable likelihood that, even if the testimony was perjured, it affected the judgment, *supra* B.1. Similarly, under the *Strickland* standard Petitioner could show no prejudice from counsel's failure to object to testimony about whether Petitioner's *Miranda* rights were, or were not, read from a card. Similarly, Petitioner cannot show that counsel's failure to impeach the witness had any bearing on the outcome of the case.

Petitioner's third argument under this ground for relief is that his lawyer should have called the victim's brother as a witness. Counsel testified during the state habeas proceeding that this testimony would have been injurious to the defense.[9] It is well settled that courts should not hastily second guess the tactical decisions made by counsel during the pendency of a trial because they have first hand knowledge of the facts, the witnesses, and information outside the record on review. *See e.g. Strickland*, 466 U.S. at 691; *Bobby v. Van Hook*, 558 U.S. 4 (2009). Even if Petitioner shows that the testimony "could support [his] defense, it would be reasonable to conclude that a competent attorney might elect not to use it." *Harrington*, 131 S. Ct. at 789. Accordingly, Petitioner's claim

---

[9] Specifically, counsel testified that her "private investigator's interview with the victim's brother indicated that he was going to be very harmful to [Petitioner] in his testimony, and [she] thought it best not to even have him [at the trial] so the State couldn't call him."

with regard to the testimony that his counsel could have offered is unavailing.

Finally, Petitioner argues that his counsel failed to adequately cross examine witnesses without setting forth specific allegations of deficient performance. However, as is the decision to call, or not call, a witness, the strategy of handling witnesses is one that is entitled to a great deal of deference under regular review of claims of ineffective assistance,[10] and even more so when the constraints of 2254 review are added to the equation. Counsel here cross examined all of the state's witnesses, which included bringing out the irregularities of the time sequence testified to by Deputy Knight. In sum, the Court cannot find that the state court's decision to deny relief was contrary to, or an unreasonable application of *Strickland.*

### *V. CONCLUSION & RECOMMENDATION*

The Court finds that the state decision in Petitioner's case was not contrary to, or an unreasonable application of, clearly established federal law. Further, the state court did not base its decision on an unreasonable application of the facts. Thus, Petitioner is not entitled to habeas relief under § 2254. Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment (Doc. 26) be **GRANTED** and the habeas petition be **DISMISSED** with prejudice. In addition, the undersigned recommends that Petitioner's Motion for Counsel to be Appointed (Doc. 35) be **DENIED**.

Any party may, within fourteen [14] days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge.. Failure to timely file objections to

[10] See, e.g., *Sallie v. North Carolina*, 587 F.2d 636, 640 (4th Cir.1978) ("[reasonableness] standard not intended to promote judicial second-guessing on questions of strategy as basic as the handling of a witness").

this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the pro se petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to any other counsel of record, as applicable.

DATED: 1-15-2013

**DAVID J. JOEL**
**UNITED STATES MAGISTRATE JUDGE**